**Berry CASH, Appellant,**

v.

**Louis LEBOWITZ, Appellee.**

**No. 05–86–00940–CV.**

Court of Appeals of Texas, Dallas.

June 1, 1987.

Rehearing Denied July 9, 1987.

Richard V. Norminton, Charles W. Cunningham, Dallas, for appellant.

Roy L. Stacy, David M. Skoglind, Dallas, for appellee.

Before DEVANY, BAKER and McCRAW, JJ.

DEVANY, Justice.

This appeal involves a dispute over the title to a motor vehicle and the Certificate of Title Act (hereinafter "Act").[1]

Berry Cash filed suit against Louis Lebowitz seeking title to and possession of a 1972 Mercedes Benz 280 SE convertible. In addition, Cash sought a declaratory judgment that he was the sole owner of the Mercedes; he also sought damages, injunctive relief, pre- and post-judgment interest, and attorney's fees. After filing his first amended answer, Lebowitz sought and was granted summary judgment on the grounds that Cash's suit was barred as a matter of law by the Act. On appeal, Cash contends that the trial court erred in granting summary judgment because Lebowitz failed to carry his burden of establishing that there was no genuine issue of material

fact and that he was entitled to judgment as a matter of law. We agree and reverse and remand for a new trial.

In 1982, C & C Auto Sales purchased the Mercedes in question at an auction sale in Arizona. C & C did some restoration work on the Mercedes and in the spring of 1984 traded the car to Pat Brown d/b/a Brown Motor Works in exchange for two Maseratis. Brown was given the title to the Mercedes but never applied for a title in his name or the name of his dealership. In depositions, Brown explained that as a licensed auto dealer he was not required to register any car he bought but could leave the title "open"[2] until the car was transferred to a non-dealer.

Lebowitz was the landlord of Brown Motor Works and sometime business "partner" of Brown. Brown owed Lebowitz approximately $80,000 for two cars which Brown had sold for Lebowitz but for which Lebowitz had never been paid. In addition, Brown owed Lebowitz approximately $13,000 in back rent. In the winter of 1984, Lebowitz evicted Brown because Brown had not brought the arrearages in rent current. In order to get back into the property, and to reduce his indebtedness to Lebowitz, Brown entered into an agreement with Lebowitz to transfer title to the Mercedes to Lebowitz. They agreed that Brown would sell the car for Lebowitz and give the proceeds from the sale to him. Lebowitz would then apply this money to the debt. Brown gave Lebowitz physical possession of the title document in January, 1985. That title document still reflected C & C Auto Sales as the owner of the car.

Cash and his wife first saw the car in Brown Motor Works' showroom in February of 1985. They test-drove it but decided to refrain from purchasing the car at that time. On May 31, 1985, Cash gave Brown Motor Works a $1,000 check to secure a cash-right-of-first-refusal on the Mercedes.

1. TEX.REV.CIV.STAT.ANN. art. 6687–1 (Vernon 1977).

2. An example of how this works follows: A transfers an automobile to B, a dealer. The car is then transferred in turn to C, D, E, F, and G, who are also dealers. G transfers the car to H, who is not a dealer. The only parties who would appear on the chain of title would be A, B, and H. C, D, E, F, and G have all owned the car but none would appear on the chain of title.

On July 2, 1985, Cash paid $50,000 to Brown Motor Works for the Mercedes. Brown never tendered this money to Lebowitz. Cash was not given the certificate of title at the time of the sale.

As part of the sales agreement, Brown Motor Works was to install an air-conditioner. Cash took the car back in for this work and then left on vacation. Shortly thereafter, Brown Motor Works filed for bankruptcy. Lebowitz, upon discovering that bankruptcy had been filed and that the car was on the premises of Brown Motor Works, took possession of the car. Lebowitz then applied for and received title to the car in his name. When the Cashes returned from their vacation, Mrs. Cash went to pick up the car from Brown Motor Works. When she arrived, she was told by an employee that the car belonged to Lebowitz and that he had possession of it. This suit followed.

In reviewing summary judgment proceedings, the reviewing court must apply the following rules: (1) the movant has the burden to show that there is no issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed fact issue, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference is indulged in favor of nonmovants and doubts resolved in their favor. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Wilcox v. St. Mary's University of San Antonio, Inc.*, 531 S.W.2d 589, 593 (Tex.1975). When the defendant moves for summary judgment, the opponent of the motion does not have the burden to establish that there is any issue of fact; it is the movant that has the burden to negate conclusively the existence of one or more of the essential facts necessary to sustain the opponent's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983); *Frost National Bank v. Matthews*, 713 S.W.2d 365, 368 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.); *Kolb v. Texas Employers' Insurance Association*, 585 S.W.2d 870, 872–73 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.).

Section 33 of the Act states that no motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title on a form prescribed by the Act. Section 53 provides that any sale made that does not comply with the provisions of the Act is void and no title shall pass until the Act has been complied with. Because it is undisputed that the sale between Brown Motor Works and Cash did not comply with the Act, Lebowitz argues that the sale was void, that Cash has no cause of action against him, and that summary judgment was properly entered against Cash. We do not agree.

The legislative intent in adopting the Certificate of Title Act was to lessen and prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens. *Motor Inv. Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482, 484 (1943); *Najarian v. David Taylor Cadillac*, 705 S.W.2d 809, 811 (Tex.App.—Houston [1st Dist.] 1986, no writ). It was not to prevent sales and transfers of interest in motor vehicles. *Najarian*, 705 S.W.2d at 811. Therefore, the sale of a vehicle without compliance with the Act is valid *as between the parties* although the Act declares that non-compliance renders the sale void. *Phil Phillips Ford, Inc. v. St. Paul Fire and Marine Insurance Company*, 465 S.W.2d 933, 937 (Tex.1971); *Pfluger v. Colquitt*, 620 S.W.2d 739, 742 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Consequently, the key issue in this appeal is whether Lebowitz has sustained his burden of conclusively establishing that he is not a "party" to the sale.

Cash alleged in his petition that Brown d/b/a Brown Motor Works was an agent for Lebowitz in the sale of Lebowitz' automobile to Cash and, therefore, that Lebowitz was a "party" to the transaction. If Brown was acting as Lebowitz' agent in selling the vehicle, the transaction would have the same effect as if Cash had dealt personally with Lebowitz, because one who acts through a duly authorized agent is bound as if he had acted in person. *Pfluger*, 620 S.W.2d at 743; *Lucas v. Whiteley*,

550 S.W.2d 767, 769 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). If Brown was Lebowitz' agent, Cash would be entitled to demand a proper transfer of the title from Lebowitz.

 This result would not be altered by Cash's payment of the purchase price to Brown. If Brown was Lebowitz' agent in making the sale, when Brown accepted the check, he did so as Lebowitz' agent and became responsible to Lebowitz for the money; thus, the payment would have the same effect as a payment directly to Lebowitz. *Pfluger,* 620 S.W.2d at 743. Brown's subsequent conversion of the money would not defeat Cash's right to damages or to his right to demand a proper transfer of the certificate of title from Lebowitz. *Id.; See also McCroan v. Cowan,* 473 S.W.2d 255 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.). If Brown is Lebowitz' agent, then between Cash and Lebowitz, any damage resulting from Brown's faithlessness and chicanery must be borne by Lebowitz, Brown's principal. *Pfluger,* 620 S.W.2d at 743.

Included in Lebowitz' own motion for summary judgment is his exhibit A, which is a letter agreement between Brown and Lebowitz. This agreement reads:

December 20, 1984

Mr. Louis H. Lebowitz
10400 N. Central Expressway
Suite 300
Dallas, Texas 75231

Re: 1972 white Mercedes SE convertible, Serial No. 11102512002593; Title No. 41355889; 1983 white Lamborghini Jalpa, Serial No. ZA9J00000DLA; Customs Entry No. 84–315161–1; License No. EE98332.

———————————————

Dear Mr. Lebowitz:

*This will confirm your ownership of the above-referenced automobiles.*

*Per our agreement, we will use our best efforts to resell the subject automobiles for you at such prices and upon such terms as you may, from time to time, approve in writing.* I have delivered to you the Texas Certificate of Title relating to the Mercedes convertible, and all title and other documentation in my possession relating to the Lamborghini, to better evidence and/or effect your ownership of the subject automobiles, and will, upon request from you, execute, acknowledge and deliver to you such additional documentation as you may require to better evidence and/or effect your ownership of the subject automobiles.

(emphasis added).

This letter in itself raises a fact question as to whether Brown was acting as an agent for Lebowitz. As we have recently stated: "A movant's exhibit can support a motion for summary judgment *or it may create a fact question ..." Keever v. Hall and Northway Advertising, Inc.,* 727 S.W.2d 704 (Tex.App.—Dallas 1987, no writ). In addition, in Lebowitz' deposition he testified that he wanted Brown to procure a buyer for the car. There is also deposition testimony that prior to this transaction, Brown and Lebowitz had entered into agreements by which Brown would purchase rare luxury and sports cars through the use of Lebowitz' cash and credit standing. Brown would sell the automobiles and Lebowitz would be given a pre-determined profit. If the automobile brought more than was needed to pay off the debt and Lebowitz' return, then Brown would receive the excess. If the automobile did not bring in enough to cover the debt and Lebowitz' pre-determined profit, Brown would suffer the loss. As stated earlier, it was Brown's failure to turn over to Lebowitz the proceeds from two prior sales that led to the transaction that forms the basis of this dispute. In Cash's deposition testimony, he testified that Brown told him in conversations subsequent to the original transaction that he was acting as an agent for Lebowitz and that he intended to work things out with Lebowitz and that Cash would get his car. In Brown's affidavit, he swore that he and Lebowitz had agreed that Brown would arrange for the sale of the Mercedes and that he would deliver a portion of the proceeds to Lebowitz.

The above evidence raises a significant fact issue as to agency; consequently, the trial court erred in granting summary judgment against Cash.

We reverse the judgment of the trial court and remand the case for trial.